In the Matter of ELITE DAIRY PRODUCTS, INC., Respondent, against PETER G. TEN EYCK, as Commissioner of the Department of Agriculture and Markets of the State of New York, Appellant.

(Argued June 5, 1936; decided July 8, 1936.)

490

*Henry S. Manley* for appellant.

*Herbert L. Maltinsky* and *Harry L. Marcus* for respondent.

LEHMAN, J. In March, 1935, the petitioner Elite Dairy Products, Inc., applied for a " license to purchase, handle, sell or distribute milk," pursuant to the provisions of article 21 of the Agriculture and Markets Law (Cons. Laws, ch. 69) for the period ending March 31, 1936. The application was denied by the Commissioner of the Department of Agriculture and Markets. The determination of the Commissioner was brought before the Appellate Division for review by certiorari proceedings. That court annulled the determination and directed the Department of Agriculture to issue a license.

A supervisor of field work of the Department of Agriculture held a hearing upon that application. He reported that the application should be denied. Upon receipt of the report, the Director of the Division of Milk Control filed a memorandum containing a similar recommendation. Thereupon an order was made " that, in accordance with the memorandum of the Director of the Division of Milk Control dated June 8th, 1935, the application of said Elite Dairy Products, Inc., for an extension of its license to permit the sale of fluid milk be and the same is hereby denied." The order was signed " Peter G. Ten Eyck, Commissioner of Agriculture and Markets of the State of New York, by Kenneth F. Fee, Director, Division of Milk Control."

The Agriculture and Markets Law provides (Art. 21, § 258-c): " No license shall be granted to a person not now engaged in business as a milk dealer except for the con-

tinuation of a now existing business, and no license shall be granted to authorize the extension of an existing business by the operation of an additional plant or other new or additional facility, unless the commissioner is satisfied that the applicant is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business, that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest."

The statute forbids any person from engaging in business as a milk dealer without a license. That business is subject to reasonable regulation to promote the public welfare and the power of the State to require that all persons who engage in that business shall be licensed is not now challenged. Nevertheless prohibition of a right to engage in a lawful business may not be arbitrary, and conditions imposed must be reasonable. The Appellate Division has construed the statute as prohibiting absolutely the grant of a license to any person " not now engaged in business as a milk dealer " and delegating to the Commissioner arbitrary authority to determine whether a license should be granted even for the extension of an existing business. For that reason it has held that the statute is unconstitutional.

The application for a license was not refused on the ground that the applicant is a person " not now engaged in business as a milk dealer." The hearings which were held were directed to ascertaining whether the applicant " is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business," and whether the issuance of a license will not tend to a destructive competition and will be in the public interest. The Commissioner does not now assert any right to deny to the applicant a license except upon the ground that the evidence produced at the hearing justifies the exercise of a discretion vested in him by the

statute to refuse a license to any person either to enter into business as a milk dealer or to extend an existing business. He urges that the statute, properly construed, is not intended to prohibit the issuance of a license to " a person not now engaged in business as a milk dealer except for the continuation of a now existing business," but is intended only to impose the same conditions upon the issuance of a license to a person who proposes to establish a new business which in clear language is imposed upon the issuance of a license to extend an existing business.

A determination of the Commissioner which denies to an applicant a license to engage in business may be reviewed by the courts. The determination may be annulled where it does not appear that it is based soundly upon a ground for which the applicant may, in accordance with law, be excluded from engaging in a business which would, otherwise, be lawful. Before a court may direct that a license shall be issued, it must appear, as matter of law, that *no* valid ground exists for its denial. A determination based on reasonable grounds cannot be assailed because the Legislature may, perhaps, have intended to confer upon the Commissioner an arbitrary power. The Legislature has conferred upon the Commissioner power to grant licenses but has attempted to circumscribe the power by conditions. The Commissioner in the exercise of his powers must observe limitations placed upon his power by the Legislature so far as such limitations are valid; he must disregard those which are invalid. So long as the Commissioner and the applicant agree that the Commissioner may not arbitrarily deny to a person not now engaged in business as a milk dealer a license to establish a new business, it is immaterial whether, as the Commissioner maintains, the statute was never intended to confer such power upon him or whether, as the Appellate Division has held, the Legislature made a futile attempt to confer it. In either view the question

here presented is whether the Commissioner properly determined that the applicant for a license failed to show compliance with valid conditions or limitations imposed by the Legislature upon the grant of licenses.

In clear language the statute provides that a license, even for the extension of an existing business, shall not be granted " unless the commissioner is satisfied that the applicant is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business, that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." Every reason which could be urged in justification of the conditions so imposed upon the grant of a license for the extension of an existing business would apply, perhaps, with even greater force to the grant of a license to a " person not now engaged in business as a milk dealer except for the continuation of a now existing business." In section 258-c of the statute the Legislature quite evidently intended to limit the grant of licenses in both cases. Assuming that one of the limitations there imposed was intended to exclude completely from the field in which the Commissioner might exercise a power to grant a license, applications falling into the second category, yet excision of that limitation would still leave in force the conditions imposed by the Legislature upon the grant of *any* license. The field for the exercise of the Commissioner's power and duty to issue licenses would be enlarged; the conditions governing the manner of its exercise would still remain. We then reach the question whether the determination may be justified by failure of the applicant to show compliance with these conditions.

We are told that in imposing these conditions, the Legislature has attempted to delegate to the Commissioner a power to deny a license to enter or extend a lawful private business without guide or standard to

direct or restrain the exercise of that power. The condition that the Commissioner shall be satisfied that the applicant is " qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business " is not fairly open to that criticism. True, the Legislature has not attempted to create a rule of thumb by which a man's character, experience, financial responsibility and equipment may be measured. It is difficult to conceive of a rule of thumb which could be formulated. None the less, it has created a standard by which such qualifications can be measured. They must be sufficient " to properly conduct the proposed business." All that is left to the Commissioner is to weigh the evidence and determine the fact. It can hardly be doubted that where the State has power to require a license for the pursuit of a particular business, it may withhold a license from those who are not properly qualified to conduct it. There may be reasonable difference of opinion as to the nature of the qualifications that should be required of an applicant for a license to conduct a particular kind of business. The Legislature has determined the nature of those qualifications. It is not part of the legislative function to determine whether a particular applicant has these qualifications. There determination may properly be left to an administrative officer. Rigid formulas for determining character or evaluating experience or the sufficiency of financial responsibility and equipment are useless if they are broad enough to include every factor which may be relevant in a particular case; they become arbitrary to the extent that they exclude any such factor. The Legislature may properly authorize an administrative officer to weigh the evidence in each case and determine questions of fact. Any discretion, there, left to the administrative officer is confined to a designated field, and within that field rests, not upon unfettered choice, but upon the application of rules of reason to facts proven or found. All

applicants similarly situated must be treated alike if the Commissioner properly determines the question submitted to him for decision. Legislative bodies have often without successful challenge intrusted wider discretion to administrative officers and bodies. (Cf. *Federal Radio Commission* v. *Nelson Bros. Bond & Mortgage Co.*, 289 U. S. 266; *Matter of Mandel* v. *Bd. of Regents*, 250 N. Y. 173; *People* v. *Perretta*, 253 N. Y. 305.)

There may be justified doubt as to whether the Legislature could impose the condition that the Commissioner be satisfied also that " the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." We do not reach that question unless it appears from the order of the Commissioner that the denial was not justified by the applicant's failure to show that he was qualified " to properly conduct the proposed business." Inquiry as to the probable effect of the issuance of a license would be a vain gesture where, upon the evidence submitted, the Commissioner finds that, because of lack of qualifications, the applicant is not entitled to receive a license. In this case the Commissioner has made no express findings on any question. Indeed, it does not appear that the Commissioner has personally passed upon the application. The hearings were held by a supervisor of field work. He reported to the Director of the Division of Milk Control. That officer filed a " memorandum " and, as stated above, the order of the Commissioner recites that it is made " in accordance with the memorandum of the Director." The evidence may be sufficient to sustain a finding by the Commissioner that the applicant lacks the required qualifications. The order does not show that such a finding has been made by the Commissioner.

The statute imposes upon the Commissioner duties which, perhaps, no single man could perform in person. There can be no reasonable doubt that the Legislature intended that at least some of his duties may be performed

and some of his powers exercised through the agency of an employee of the department. In some cases the right to delegate powers is expressly provided; in other cases it is clearly implied in the statute. Article 21 of the statute provides for a division in the department to be known as the Division of Milk Control and that the functions, powers and duties of the department as provided by that article shall be exercised and performed therein by and through the Division of Milk Control (§ 252). It further provides that any designated employee may conduct " hearings and investigations " (§ 254). It does not, however, leave to an employee who holds a hearing the determination whether an application for a license shall be granted or denied. There it requires as a condition for the grant of a license that the *Commissioner* be satisfied that the applicant is properly qualified and that the issuance of a license would be in the public interest. The hearing is merely a method for obtaining knowledge of the facts upon which the determination must be based. That function is quasi-judicial. Denial may work great injury to an applicant for a license, and the Legislature has nowhere indicated that this function conferred upon the Commissioner may be delegated by him to an employee of the department. We do not say that the Commissioner must, in every case, read the evidence produced at the hearing or make specific findings of fact. Where an application is granted it is of no practical importance whether or not the Commissioner makes formal findings of fact, or indeed whether or not a formal order is made by the Commissioner; for the issuance of the license clearly indicates that the Commissioner is satisfied of the existence of *all* facts which the Legislature has there made conditions precedent to the grant of a license. The courts are not concerned with the steps by which the Commissioner has become satisfied, or the manner in which his determination is made until the determination is challenged. There, no rights of the

applicants are invaded if the Commissioner's determination is reached by reliance upon the report or memorandum of a trusted employee.

The situation is different where the application for a license is denied. The applicant is entitled to opportunity to challenge a determination against him. He is denied a right to engage in a business from which he may not be lawfully excluded if he complies with the conditions properly imposed by the Legislature and which must be applicable to all persons in similar situation. The conditions imposed by the Legislature are separable. Failure to show compliance with any one condition may be fatal. Then the applicant is entitled to findings which will show the particular matter determined against him. (Cf. *Pacific States Box & Basket Co.* v. *White*, 296 U. S. 176.) That determination must be made by the Commissioner, though in reaching it, practical considerations may lead him to rely rather upon the report or memorandum of the Director of Milk Control or other officer or employee than upon independent examination of the testimony produced at the hearing.

In this case, since the denial of a license was not based upon findings made by the Commissioner, the Appellate Division had the right to annul the determination. It could not, however, direct the Commissioner to issue a license where the record does not conclusively establish that the applicant is entitled to it. Only after the Commissioner has made findings of fact can the court decide whether the findings are sustained by the evidence and whether the Legislature had power to decree that facts so found should be ground for a denial of a license.

The proceeding should be remitted to the Commissioner with direction to proceed in accordance with this opinion. The order of the Appellate Division should be modified by striking out the " direction to issue a license " and, as so modified, affirmed, without costs.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.