**In the Matter of the REVOCATION OF the DRIVER LICENSE OF Leroy C. FISCHER.**

**No. 15054.**

Supreme Court of South Dakota.

Considered on Briefs May 19, 1986.

Decided Nov. 5, 1986.

Robert Mayer, Asst. Atty. Gen., Pierre (Mark V. Meierhenry, Atty. Gen., Pierre, on brief), for appellant State Dept. of Commerce & Regulation.

Timothy L. Thomas, Rapid City, for appellee.

MORGAN, Justice.

Appellant South Dakota Department of Commerce and Regulation (Department) appeals from an order of the trial court reversing Department's decision to revoke the operator's license of Leroy Fischer (Fischer). We reverse and remand.

In September 1983, Fischer was convicted of DWI-first offense. Approximately one year later, Fischer was again charged with violating SDCL 32–23–1(2), and again pleaded guilty to DWI-first offense. His driving privileges were revoked by the trial court for a period of thirty days, pursuant to SDCL 32–23–2. Subsequently, and during the thirty-day period, Department notified Fischer that it was revoking his operator's permit for a period of one year, pursuant to SDCL 32–12–52.1, which provides:

> The department of commerce and regulation shall revoke the license or permit of any operator upon receiving notice of an operator's conviction for a violation of the provisions of § 32–23–1 if the judgment and sentence of the trial court failed to invoke the mandatory provisions of §§ 32–23–2 to 32–23–4, inclusive, and to the extent that the operator's privileges of driving should have been revoked and if the operator had been charged and convicted consistent with the records of the department of commerce and regulation.

Fischer exercised his right to a trial *de novo* in circuit court per SDCL 32–12–59. *See also Application of Ewert*, 81 S.D. 354, 135 N.W.2d 228 (1965). Following submission of the case to the trial court on briefs, the trial court reversed Department's revocation, stating:

> This Court's reading of SDCL 32–12–52 (sic) limits the Department's power to revoke an individual's driver's license to those situations where the trial court has failed to invoke a judgment and sentence which is consistent with and mandatory for the offense charged. Here the trial court invoked a judgment and sentence which was proper for the first offense D.W.I. ...
>
> If the Legislature wishes to grant the Department the power it now argues it possesses, the Legislature must state such an intent. It has not done so and this Court refuses to read such an intent into the statute.

Finding the statute as written to be vague and ambiguous, the trial court concentrated on the following statutory language: "The department of commerce and regulation shall revoke the license if the

judgment and sentence of the trial court failed to invoke the mandatory provisions of §§ 32–23–2 to 32–23–4." The trial court reasoned that it did not fail to invoke the mandatory provisions, thus SDCL 32–12–52.1 was inapplicable.

Department urges that this interpretation is erroneous and we agree. As the trial court noted, the statute is ambiguous. "Ambiguity is a condition of construction, and may exist where the literal meaning of a statute leads to an absurd or unreasonable conclusion." *Matter of Sales Tax Refund Applications*, 298 N.W.2d 799, 803 (S.D.1980). In its original form, before amendment, the statute was not a model of clarity. The phrase beginning "and to the extent ..." should have been transposed so that the statute would read:

> The department of commerce and regulation shall revoke the license or permit of any operator, to the extent that the operator's privileges of driving should have been revoked, upon receiving notice of an operator's conviction for a violation of the provisions of § 32–23–1 if the judgment and sentence of the trial court failed to invoke the mandatory provisions of §§ 32–23–2 to 32–23–4 inclusive.

We now examine the amendment language: "and if the operator had been charged and convicted consistent with the records of the department of commerce and regulation." Read literally, and as applied by the trial court, the statute as amended appears to establish two conjunctive elements to trigger departmental action: (1) The trial court must fail to impose the minimum statutory revocation; and (2) the operator must not have been charged and convicted consistent with departmental records. We do not believe that was the intent of the amendment.

The statute as originally enacted gave Department authority to act in instances of judicial leniency. The amendment adds nothing in that regard but, where it refers to "charged and convicted," we believe that it is meant to deal with prosecutorial leniency or oversight. Therefore, if we read the "and" which precedes the clause to mean "or," the statute is clearer. Thusly read, it says, in essence:

> The Department shall revoke the license, to the extent it should have been revoked if:
>
> (1) the trial court failed to invoke the mandatory revocation,
>
> or
>
> (2) the operator had been charged and convicted consistent with Department records.

"Statutes should be given a sensible, practical and workable construction, and to such end, the manifest intent of legislature will prevail over literal meaning of words. [citation omitted] Consequently, it is a familiar rule of construction that the word 'and'· is sometimes construed as a disjunctive such as 'or.'" *Koethe v. Johnson*, 328 N.W.2d 293, 299 (Iowa 1982). " '[C]ourts will construe disjunctive words as conjunctive, and vise versa, and will disregard technical rules of grammar and punctuation, when necessary to arrive at the intent of the legislative body.' " *Green v. City of Mt. Pleasant*, 256 Iowa 1184, 1212, 131 N.W.2d 5, 23 (1964) (quoting *State v. Hardin County Rural Electric Co-op*, 226 Iowa 896, 916, 285 N.W. 219, 229 (1939)). " 'While words 'or' and 'and' are not to be treated as interchangeable, ... their strict meaning is more readily departed from than that of other words and one read in the place of the other in deference to the meaning of the context [of a statute].' " *Romeo Homes v. Nims*, 361 Mich. 128, 137, 105 N.W.2d 186, 191 (1960) (quoting *L.A. Darling Co. v. Water Resources Commission*, 341 Mich. 654, 662, 67 N.W.2d 890, 894 (1955)). In order to effectuate the intention of the legislature, the word "and" in a statute is sometimes construed to mean "or." *See Heckathorn v. Heckathorn*, 284 Mich. 677, 280 N.W. 79 (1938). The laxity in the use of the conjunctive 'and' and the disjunctive 'or' is so frequent that the doctrine has been accepted that they are interchangeable and that one may be substituted for the other if to do so is necessary to give effect to any

part of a statute or to effectuate the intention of the Legislature.

*Ledwith v. Bankers Life Ins. Co.*, 156 Neb. 107, 125, 54 N.W.2d 409, 421 (1952).

■ We find that reading the amendment in the conjunctive leads to an absurd and unreasonable conclusion. We therefore read the word "and" at the start of the 1984 amendment to be interpreted as "or" and as thus interpreted, we find the ambiguity in the statute to be cleared up. Department was therefore correct in revoking the license and we reverse the decision of the trial court in that regard.

We now examine Fischer's argument that the departmental revocation is an unconstitutional denial of due process under the United States Constitution. In this vein, Fischer relies heavily on a United States Supreme Court decision, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), wherein the Court held:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

402 U.S. at 539, 91 S.Ct. at 1589, 29 L.Ed.2d at 94. We hold Fischer's reliance on *Bell* is misplaced for several reasons.

■ First, assuming *Bell* was applicable to begin with, the departmental order did not affect an *issued* license. When Fischer received the notice, he had no license, nor any immediate right to a license. His prior licenses had been *revoked* by the trial court pursuant to his plea of guilty to driving while under the influence. To qualify for another license, Fischer would have to apply and pass the requisite examination per SDCL 32–12–47.1. So inasmuch as Fischer was not at that time a duly licensed motor

vehicle operator, we find the *Bell* admonition inapplicable.

Further, we find *Bell* inapplicable to the statutory scheme we are examining. *Bell* dealt with an uninsured motorist statute and as the decision points out, the Georgia statutory scheme involved a significant issue of liability, thus requiring a procedure for determining the question of whether there is a reasonable possibility of a judgment being rendered against the licensee as the result of an accident.[1]

In *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976), the United States Supreme Court considered the issue of "the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter." The Court first noted: "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 332, 96 S.Ct. at 901, 47 L.Ed.2d at 31. The decision further noted, however: " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972)) (brackets in original).

■ *Mathews* set out three factors to be considered in determining the specific dictates of due process:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

1. Fischer correctly notes that we quoted *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), favorably in *Matter of Revocation of Driver Lic. of Kramer*, 377 N.W.2d 589 (S.D. 1985), but *Kramer* involved an implied consent procedure under SDCL 32–23–11, and our decision pointed out that Kramer was afforded a pre-revocation hearing under our statute.

that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

The private interest involved is, of course, the granted license to operate a motor vehicle. "More particularly, the driver's interest is in continued possession and use of his license pending the outcome of the hearing due him." *Mackey v. Montrym*, 443 U.S. 1, 11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321, 330 (1979).[2]

The *Mackey* decision identified the primary function of due process as minimizing the risk of erroneous decisions.

> [T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. ... And, when prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.

443 U.S. at 13, 99 S.Ct. at 2618, 61 L.Ed.2d at 331.

Under our statutory scheme, we find the risk of erroneous deprivation to be minimal. There are really only two questions to be resolved under the mandatory language of our statute: Are Department's records correct; and was the mandatory penalty imposed per the offense as it was, or should have been, charged? Fischer does not suggest that Department's records were in error and obviously he was not charged in accord therewith. Because of the mandatory nature of the statute and the total lack of discretion on the part of Department, we can see no probable value of additional or substitute safeguards for reasons that we will discuss below.

We then look at the third element, the governmental function involved and the fiscal and administrative burdens that would be entailed by substitute procedures. Here, as in *Mackey, supra*, we believe that the statute was enacted in aid of the state's police function for the purpose of protecting the safety of its people, particularly the motoring public. The *Mackey* Court further noted: "We have traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety." 443 U.S. at 17, 99 S.Ct. at 2620, 61 L.Ed.2d at 334. In this instance, State's interest in public safety is served in two respects. The existence of the summary sanction of the statute should serve as a deterrent to drunken driving. A one-year revocation of driving privileges with no provision for any type of lesser permits should give pause to any sensible person contemplating drinking and driving. And lastly, by promptly removing such drivers from the highways, the summary sanction contributes to the safety of the general driving public, including, incidentally, the intoxicated driver.

As to the administrative burden of substitute procedures, the *Mackey* Court summarized it well:

> The summary and automatic character of the suspension sanction available under the statute is critical to attainment of these objectives. A presuspension hearing would substantially undermine the state interest in public safety by giving drivers significant incentive to . . . demand a presuspension hearing as a dilatory tactic. Moreover, the incentive to delay arising from the availability of a presuspension hearing would generate a sharp increase in the number of hearings sought and therefore impose a substantial fiscal and administrative burden on the [State].

443 U.S. at 18, 99 S.Ct. at 2621, 61 L.Ed.2d at 335 (citing *Dixon v. Love*, 431 U.S. 105,

---

**2.** As previously mentioned, there was no granted license in this case, but since the issue was fully briefed and argued we will treat Fischer as having a license at the time of notice of revocation.

114, 97 S.Ct. 1723, 1728, 52 L.Ed.2d 172, 181 (1977).

We therefore hold that the South Dakota statutory scheme of revocation without prior hearing, but subject to immediate appeal to the courts, does not deprive operators of due process under the Fifth or Fourteenth Amendments of the United States Constitution.

Fischer next contends that his guilty plea, entered on the last charge, was invalid as the plea was not voluntarily and intelligently made because he was not advised that it would result in the mandatory revocation of his license for a period of one year. The record does not reflect that the trial court was aware that Fischer was being afforded an opportunity to plead to a first-offense DWI on a second occasion. Whether that came about through the state's attorney's exercise of prosecutorial discretion or his inattention to the departmental records, we do not know, nor do we find it important.

■ We have previously held that the proceedings to determine or to review the propriety of the cancellation, suspension, or revocation of a driver's license is separate and distinct from the criminal trial for driving while intoxicated. *Balsz v. State, Dept. of Public Safety,* 366 N.W.2d 492 (S.D.1985); *In re Mehrer,* 273 N.W.2d 194 (S.D.1979); *Beare v. Smith,* 82 S.D. 20, 140 N.W.2d 603 (1966).

In *Blow v. Commissioner of Motor Vehicles,* 83 S.D. 628, 631, 164 N.W.2d 351, 352 (1969), we held:

The proceeding to determine or review the suspension or revocation of a driver's license for refusal to submit to a chemical test is a civil and administrative proceeding. It is separate and distinct from a criminal action on a charge of driving while under the influence of intoxicating liquor or drugs.

We now hold that that distinction is equally appropriate in these administrative proceedings.

■ We think that Fischer would demand of the trial court far more in the way of information than this court has ever required. In *Gregory v. State,* 353 N.W.2d 777 (S.D.1984), where the defendant complained that he had not been properly advised that a life sentence precluded parole before he entered a guilty plea. In response we said: "We follow those decisions which have held that it is not necessary for a court to inform a defendant of the collateral consequences of a guilty plea, such as eligibility for parole, in order for a plea to be intelligently and voluntarily entered." *Id.* at 781.

In *State v. Olesen,* 331 N.W.2d 75, 77 (S.D.1983), we said that "a defendant need not be advised of any enhanced punishment that may result from the conviction should the defendant subsequently be convicted of a crime." (Citing *State v. Kramer,* 235 N.W.2d 114 (Iowa 1975); *State v. Watts,* 186 N.W.2d 611 (Iowa 1971).)

Pertinent to this situation, the United States Supreme Court in *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747, 761 (1970), said: "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision."

■ Finally, with respect to this issue, Fischer's plea of guilty in the criminal action still stands. Fischer made no attempt to appeal from that conviction. The proceedings before us is an appeal of the trial court's decision in an administrative appeal and Fischer cannot use this forum to collaterally attack his plea of guilty.

■ Finally, we look at Fischer's argument that Department's reading of SDCL 32–12–52.1, which we have now approved, is unconstitutional in that it violates the separation of powers of the government of the state of South Dakota provided by South Dakota Constitution, Article II. This is a makeweight argument at best and that is giving it more than it is due. We have repeatedly said that one who would undertake to show a statute to be unconstitutional carries a heavy burden. In this

case, counsel has failed to cite any authority in support of his allegation. We therefore deem it waived.

We reverse the trial court's judgment and remand with instructions to enter judgment affirming Department's revocation of Fischer's license.

WUEST, C.J., and FOSHEIM, J., concur.

HENDERSON and SABERS, JJ., concur in result.

SABERS, Justice (concurring in result).

I believe the following is the correct interpretation of the meaning and effect of SDCL 32–12–52.1, and I concur in the result.

SDCL 32–12–52.1 requires the Department of Commerce to revoke Fischer's license for one year because "if he had been charged and convicted consistent with" their "records," he would have been charged with a DWI second. If he had been charged and convicted of a DWI second, the circuit court would have been required to unconditionally revoke his driving privilege for a period of at least one year. SDCL 32–23–3. It does not matter that he was charged with a second first offense DWI, because according to Department's records he should have been charged with a second offense DWI and revoked for a period of one year. SDCL 32–12–52.1.

Although the statute was poorly worded in its 1983 form and in the amended 1984 form, the intended meaning is discernible. Since the cardinal principle of statutory construction is to preserve and not to destroy, we should uphold that meaning where possible. *Matter of Silver King Mines, Permit Ex-5*, 315 N.W.2d 689, 692 (S.D.1982) (Henderson, J., specially concurring).