PEOPLE v LYNCH

Docket No. 63061. Argued April 15, 1980 (Calendar No. 4).—Decided February 23, 1981.

Anthony Lynch was charged with possession of a gas-ejecting device (a "gas pen") and was convicted on his plea of guilty in Recorder's Court of Detroit, Patricia J. Boyle, J., of attempting to commit the offense. The Court of Appeals, Bronson, P.J., and M. J. Kelly and D. C. Riley, JJ., vacated the defendant's conviction, holding that the statute prohibiting possession of any gas-ejecting device is unconstitutionally vague and overbroad, and that the statute is not susceptible of a limiting construction because it lacks the requirement of a specific intent as to possession of these devices (Docket No. 77-1610). The people appeal. In a unanimous opinion by Justice Levin, the Supreme Court *held:*

1. The prosecutor contends that Lynch is precluded from challenging the constitutionality of the statute because he failed to raise the issue in Recorder's Court of Detroit, and that Lynch does not have standing to assert the overbreadth of the statute in reaching "innocent" gas-ejecting devices (such as aerosol hairspray and deodorant cans) because he was not carrying such an innocent device. While generally a question may not be raised for the first time on appeal, this rule is not inflexible. The question of the statute's vagueness was the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 574.

16 Am Jur 2d (Rev), Constitutional Law § 176.

[2] 16A Am Jur 2d, Constitutional Law § 818.

73 Am Jur 2d, Statutes § 346.

[3] 16A Am Jur 2d, Constitutional Law § 461.

[4-6] 73 Am Jur 2d, Statutes §§ 272, 275.

79 Am Jur 2d, Weapons and Firearms § 2.

Validity and construction of regulations governing carrying, possession, or use of tear gas or similar chemical weapons. 30 ALR3d 1416.

[7] 79 Am Jur 2d, Weapons and Firearms § 24.

[8, 9] 16A Am Jur 2d, Constitutional Law §§ 813, 827.

[10] 73 Am Jur 2d, Statutes §§ 375, 408.

primary issue addressed and briefed both in the Court of Appeals and in the Supreme Court. The record provides an adequate basis for decision. Conflicting decisions in the Court of Appeals on the question have rendered the statute of uncertain validity. Law-abiding citizens may wish to carry gas-ejecting devices for reasons of personal security, yet cannot know whether they may do so under the present state of the law.

2. Constitutional challenges on grounds of vagueness to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. Due regard for principles of standing, and recognition that declaring a statute unconstitutional is the gravest and most delicate duty that the Court is called on to perform, mandate that, outside the context of the First Amendment, one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. Lynch thus will not be heard to assert that the statute is overbroad in reaching "innocent" gas-ejecting devices where the facts on which he was convicted show that he was carrying a gas-ejecting *weapon* and the statute clearly reaches such conduct.

3. While the statute by its terms appears to reach gas-ejecting weapons, a thorough discussion of the meaning of the statute is appropriate in the light of the Court of Appeals holding that the statute is not susceptible of a limiting construction and the conflict among different Court of Appeals panels regarding the statute's constitutionality. The statutory language would cover any device capable of emitting a gas that would temporarily harm a person. However, a literal construction ought not to be given to a statute where that would be contrary to the apparent intent of the Legislature. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding they convey as used in the particular act.

4. The language at issue is included in a statute dealing with such items as machine guns, bombs, blackjacks, metallic knuckles, billies and bludgeons. The objects in this class are not only exclusively weapons, but are weapons used almost exclusively in the perpetration of crime. That the language at issue deals with such a narrow class of weapons is a strong indication that the Legislature intended to reach only gas-ejecting *weapons.* When the Legislature amended the statute to include the language dealing with gas-ejecting devices, it had the choice of

including it in the section of the statute which made the manufacture, sale or possession of the listed objects a strict-liability offense, or in the section which required an intent to use the objects there listed unlawfully against the person of another. The Legislature chose to include the language in the section making possession a strict-liability offense. Its choice indicates that it thought of gas-ejecting devices not only as weapons, but as weapons of such danger as to merit their prohibition regardless of the intent of the possessor. Furthermore, the title of the 1929 amendment which added the language concerning gas-ejecting devices states that the legislation concerned "certain weapons, including gas ejecting or emitting weapons".

5. A 1931 decision considered a constitutional challenge to the statute. While that challenge was based on the right to bear arms and was asserted by a defendant convicted of carrying a blackjack, the Court found it necessary to assess the nature of the items which the Legislature intended to prohibit to decide whether the provision was within the police power of the state. That contemporaneous characterization of the intended subject matter of the statute is of precedential significance here. The Court decided in 1931 that the list of weapons demonstrates a definite intention of the Legislature to protect society from a recognized menace. It does not include ordinary guns, swords, revolvers or other weapons usually relied upon by good citizens for defense or pleasure. It is a partial inventory of the arsenal of the public enemy, the gangster. It describes some of the particular weapons with which he wars on the state. It was thus decided in 1931 that the statute dealt with weapons— weapons of such danger and malevolent association as to merit total eradication from society, with narrow, licensed exceptions. There is no reason to depart from that decision today.

6. Lynch told the trial court that he was carrying in his pocket "some spray stuff like the mailman would carry" that would "make people cough". Those facts would allow a trier of fact to draw the reasonable inference that Lynch was attempting to carry a gas-ejecting weapon. There was, therefore, an adequate factual basis for accepting his plea of guilty. Such small hand-held gas-ejecting weapons ("gas pens") are within the intended prohibition of the statute. The prohibition of the statute does not reach non-weapon devices such as aerosol hairsprays or deodorants.

Justice Levin also wrote separately to suggest that, had a record been developed with evidence that circumstances occurring since the statute's enactment have added a gloss to the

literal meaning of the terms so that a reasonable citizen might doubt that gas-ejecting weapons of the kind in this case were within the statute's prohibition, there would be a substantial question whether Lynch had fair notice of the statute's prohibition.

1. The statute focuses upon weapons which, at least at the time the statute was enacted, were used primarily to commit crimes. It is not at all clear that gas-ejecting weapons are of this character today. It may be that they are currently as likely to be found in a woman's purse or a mailman's pouch as in the hands of a criminal bent on mayhem. While this change in the public perception of the weapon cannot create an exception to a valid statute, it could reasonably create doubt in the minds of a law-abiding citizen whether his device is of the kind the Legislature intended to prohibit.

2. Where the doubt has been reinforced, or caused, by the apparent lack of prosecution for the open and common sale and possession of a gas-ejecting weapon from the time the statute was enacted in 1929 until Lynch was charged in 1976 the doubt which a reasonable citizen might feel whether his device is actually one which the statute prohibits may be such that the citizen is deprived of the clear warning that the Due Process Clause requires.

3. A criminal statute must give fair notice to an ordinary citizen that his contemplated conduct is forbidden. A penal enactment which is linguistically clear, but has been notoriously ignored by both its administrators and the community for an unduly extended period, imparts no more fair notice of its proscriptions than a statute which is phrased in vague terms. This does not suggest that prosecutorial nonuse, changed circumstances or pervasive public disobedience may operate to repeal or modify a valid enactment; repeal or modification is the province of the Legislature. If circumstances and public opinion have changed so as to make it now appropriate that citizens be allowed to carry gas-ejecting weapons for self-defense, it is for the Legislature to declare it so, as it recently has in limited fashion. The question suggested is not whether nonenforcement can cause a statute to lapse into desuetude and thereby become constitutionally unenforceable, but rather whether a combination of the circumstances described can operate to deprive a person of the requisite clarity of notice that his conduct is forbidden.

4. The statute appears to be drawn to reach a narrow class of particularly dangerous and crime-oriented weapons. The device Lynch carried might not appear, in the minds of today's popu-

lace, to be part of that narrow class. The common public sale of these devices without response from law enforcement officials would naturally add to the doubt that these devices are the ones the statute prohibits. While prosecutorial inaction alone might not create doubt, circumstances which appear to be present here might have added a gloss to the words of the statute, creating doubt in the minds of ordinary persons sufficient to obfuscate an otherwise fair warning. Moreover, the apparent increased acceptance and use of gas-ejecting devices by law-abiding citizens precludes reliance upon the nature of the offense itself to provide notice of the probable illegality of the conduct. Here, there appears to have been a shift in community mores: the tool of the gangster may well have become a weapon usually relied upon by good citizens for defense. The shift has apparently been encouraged or at least reinforced by a uniform lack of prosecution in the face of open and widespread availability of the devices. The combination of these factors, if proven, could have deprived Lynch of the requisite clarity of notice that his conduct was prohibited. The failure to develop the record with such evidence, however, precludes granting relief on this basis.

The judgment of the Court of Appeals is reversed and Lynch's conviction is reinstated.

## OPINION OF THE COURT

1. APPEAL — ISSUES ON APPEAL — CONSTITUTIONAL LAW — STATUTES.

The rule that a question may not be raised for the first time on appeal is not inflexible; the Supreme Court may decide whether a statute is unconstitutionally vague where that was the primary issue addressed and briefed in the Court of Appeals and in the Supreme Court, the record provides an adequate basis for decision, and conflicting decisions in the Court of Appeals on the question have created uncertainty in the state of the law.

2. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

Constitutional challenges on the ground of vagueness to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.

3. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — OVERBREADTH — STANDING.

Due regard for principles of standing, and recognition that declaring a statute unconstitutional is the gravest and most delicate duty that the Court is called upon to perform, mandate that,

outside the context of the First Amendment, one to whom the application of a statute is constitutional will not be heard to attack the statute on the ground that it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.

4. WEAPONS — GAS-EJECTING DEVICES — WORDS AND PHRASES — STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

The literal meaning of the phrase "gas-ejecting device" would cover any device capable of emitting a gas that would temporarily harm a person; however, where the language is included in a statute dealing with such items as machine guns, bombs, blackjacks, metallic knuckles, billies and bludgeons, which are all weapons used almost exclusively in the perpetration of crime, there is a strong indication that the Legislature intended the statutory prohibition to reach only gas-ejecting weapons (MCL 750.224; MSA 28.421).

5. WEAPONS — GAS-EJECTING DEVICES — POSSESSION — STRICT LIABILITY — LEGISLATIVE INTENT.

That the Legislature chose to include an amendment concerning gas-ejecting devices in a statutory section which imposes strict criminal liability for possession of certain weapons, rather than in another section which requires an unlawful intent for the offense, indicates that the Legislature thought of gas-ejecting devices as weapons of such danger as to merit their prohibition regardless of the intent of the possessor (MCL 750.224, 750.226; MSA 28.421, 28.423).

6. WEAPONS — GAS-EJECTING DEVICES — POSSESSION — LEGISLATIVE INTENT.

The title of the public act which amended the statute regulating the possession of certain items to include gas-ejecting devices and the list of items in the statute demonstrate a definite intent of the Legislature to protect society from a recognized menace of certain weapons of such danger and malevolent association as to merit total eradication from society, with narrow, licensed exceptions (MCL 750.224; MSA 28.421).

7. WEAPONS — GAS-EJECTING DEVICES — POSSESSION — ATTEMPTS — GAS PENS — WORDS AND PHRASES.

There was an adequate factual basis for accepting a defendant's plea of guilty of attempting to carry a gas-ejecting weapon where the defendant testified that the small hand-held gas-ejecting weapon or "gas pen" which he was carrying in his pocket was "some spray stuff like the mailman would carry"

that would "make people cough"; the statute prohibiting possession of gas-ejecting devices clearly reaches such conduct (MCL 750.224; MSA 28.421).

CONCURRING OPINION BY LEVIN, J.

8. WEAPONS — GAS-EJECTING DEVICES — CONSTITUTIONAL LAW —
    DUE PROCESS — NOTICE — STATUTES — DESUETUDE.

*Sufficient uncertainty about the continuing vitality of the statutory prohibition against possession of gas-ejecting devices might have been shown as to deprive a defendant of the clear notice, required by the Due Process Clause of the state Constitution, that his conduct in carrying a "gas pen" in his pocket was subject to criminal sanction had a record been developed to establish that the gas-ejecting weapons which, at the time the statute was enacted, were used primarily by "gangsters" to commit crimes have now become weapons usually relied upon by good citizens for defense, and that there has been a uniform lack of prosecution for the offense for almost 50 years in the face of open and common sale and possession of the gas-ejecting devices (Const 1963, art 1, § 17; MCL 750.224; MSA 28.421).*

9. CRIMINAL LAW — STATUTES — NOTICE — CONSTITUTIONAL LAW —
    DUE PROCESS.

*A criminal statute must give fair notice to an ordinary citizen that his contemplated conduct is forbidden (US Const, Am XIV; Const 1963, art 1, § 17).*

10. CRIMINAL LAW — STATUTES — DESUETUDE — WEAPONS — GAS-
    EJECTING DEVICES.

*Prosecutorial nonuse of a statute, changed circumstances, or pervasive public disobedience may not operate to repeal or modify a valid enactment; if circumstances and public opinion have changed since the statute's enactment so as to make it now appropriate that citizens be allowed to carry gas-ejecting weapons for self-defense, it is for the Legislature to declare it by repealing or amending the statute (MCL 750.224; MSA 28.421).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people.

*William R. Stackpoole* for defendant.

LEVIN, J. Lynch was charged with possession of a gas-ejecting device.[1] He was convicted on his plea of guilty to the reduced charge of attempting to carry a gas-ejecting device.

The Court of Appeals, applying the vagueness test outlined in *People v Howell*,[2] accepted Lynch's argument that the statute was unconstitutionally vague and overbroad and vacated his conviction, saying:

"Thus, by its failure to sufficiently distinguish between legal (such as a can of hairspray or deodorant) and illegal gas-ejecting devices, the statute does not provide sufficient notice as to what conduct is prohibited. Further, * * * it permits too broad a judgment as to what behavior falls within the ambit of the law's coverage."[3]

It said that the statute was not susceptible to a limiting construction and could be saved only by the legislative addition of a specific intent requirement.

We reverse the Court of Appeals. The statute clearly reaches gas-ejecting weapons such as Lynch attempted to carry, and thus the statute is not unconstitutionally vague as applied to him.[4]

I

The prosecutor contends that Lynch is precluded from challenging the statute on vagueness grounds

[1] MCL 750.224; MSA 28.421.

[2] *People v Howell*, 396 Mich 16; 238 NW2d 148 (1976).

[3] Unpublished opinion (Docket No. 77-1610, November 8, 1978).

[4] Const 1963, art 1, § 17, provides:

"No person shall * * * be deprived of life, liberty or property, without due process of law."

because he failed to raise the issue in Recorder's Court, and that Lynch does not have standing to assert the overbreadth of the statute in reaching innocent gas-ejecting devices because he was not carrying such an innocent device.

## A

While generally a question may not be raised for the first time on appeal, this rule is not inflexible.[5] The question of the statute's vagueness was the primary issue addressed and briefed both in the Court of Appeals and in this Court. The record provides an adequate basis for decision.[6] Conflicting decisions in the Court of Appeals on this question have rendered the statute of uncertain validity.[7] Law-abiding citizens may wish to carry gas-ejecting devices for reasons of personal security, yet cannot know whether they may do so under the present state of the law.[8]

---

[5] *Dation v Ford Motor Co,* 314 Mich 152, 160; 22 NW2d 252 (1946).

See, also, *Shavers v Attorney General,* 402 Mich 554, 593-594, fn 14; 267 NW2d 72 (1978); *People v Snow,* 386 Mich 586, 591; 194 NW2d 314 (1972); *Perin v Peuler (On Rehearing),* 373 Mich 531, 534-535; 130 NW2d 4 (1964); *Ridenour v Bay County,* 366 Mich 225, 243; 114 NW2d 172 (1962).

[6] See *Meek v Wilson,* 283 Mich 679, 689; 278 NW 731 (1938).

[7] Compare the decision of the Court of Appeals in this case and in *People v Guy,* 84 Mich App 610; 270 NW2d 662 (1978), with *People v Stinson,* 88 Mich App 672; 278 NW2d 715 (1979).

[8] By 1980 PA 346, effective March 31, 1981, the Legislature has amended MCL 750.224; MSA 28.421 to expand the definition of prohibited devices to include those that eject "gas *or other substance*" and to provide an exception for a device "capable of carrying not more than 35 grams of any combination of active and inert ingredients and which ejects, releases, or emits orthochlorobenzalmalononitrile", but which ejects no other harmful gas or substance. The amendment makes the use of the excepted device (or its sale to a minor) a misdemeanor, unless the use is either a reasonable use by a police officer in the performance of his or her duty or a reasonable use by a person to protect person or property under circumstances that would justify that person's use of physical force.

## B

As noted in *People v Howell*,[9] "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand". Due regard for principles of standing, and recognition that declaring a statute unconstitutional is " 'the gravest and most delicate duty that this Court is called on to perform' ",[10] mandate that, outside the context of the First Amendment,

"one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."[11]

Lynch thus will not be heard to assert that the statute is overbroad in reaching innocent gas-ejecting devices where the facts on which he was convicted show that he was carrying a gas-ejecting *weapon* and, as discussed below, the statute clearly reaches such conduct.[12]

---

[9] *People v Howell, supra,* p 21, citing *United States v National Dairy Products Corp,* 372 US 29; 83 S Ct 594; 9 L Ed 2d 561 (1963).

[10] *United States v Raines,* 362 US 17, 20; 80 S Ct 519; 4 L Ed 2d 524 (1960), quoting Holmes, J., in *Blodgett v Holden,* 275 US 142, 148; 48 S Ct 105; 72 L Ed 206 (1927).

[11] *United States v Raines, supra,* p 21. See also *Young v American Mini Theatres, Inc,* 427 US 50, 61; 96 S Ct 2440; 49 L Ed 2d 310 (1976); *United States v National Dairy Products Corp, supra,* p 32; *Robinson v United States,* 324 US 282, 286; 65 S Ct 666; 89 L Ed 944 (1945).

[12] Lynch claims standing to assert the overbreadth of the statute based on the alleged failure of the judge taking his plea to adduce facts showing that the device he was carrying was a weapon, rather than an innocent device within the impermissibly overbroad reach of the statute. See *Ashton v Kentucky,* 384 US 195, 198; 86 S Ct 1407; 16 L Ed 2d 469 (1966); *Shuttlesworth v Birmingham,* 382 US 87, 91-92; 86 S Ct 211; 15 L Ed 2d 176 (1965). Because we conclude that the judge did adduce facts from which a trier of fact could reasonably infer that Lynch was attempting to carry a gas-ejecting device de-

## II

While the statute by its terms appears to reach gas-ejecting weapons, a thorough discussion of the meaning of the statute is appropriate in light of the Court of Appeals holding that the statute is not susceptible to a limiting construction and the conflict among different Court of Appeals panels regarding the statute's constitutionality.

The statute in effect at the time Lynch was charged provided:[13]

"Any person who shall manufacture, sell, offer for sale or possess any machine gun or firearm which shoots or is designed to shoot automatically more than 1 shot without manual reloading, by a single function of the trigger, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb, or bomb shell, blackjack, slung shot, billy, metallic knuckles, sand club, sand bag, or bludgeon *or any gas ejecting device, weapon, cartridge, container or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact,* shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years or by a fine of not more than $2,500.00." MCL 750.224; MSA 28.421.

The italicized language was added by a 1929 amendment. 1929 PA 206.

A literal construction of the gas-ejecting-device language, independent of the statutory context, would cover any device capable of emitting a gas

signed as a weapon, see *Guilty Plea Cases,* 395 Mich 96, 130; 235 NW2d 132 (1975), this basis for standing is unavailable.

[13] Lynch was charged in late 1976. The statute was amended, effective December 29, 1978, in particulars not relevant to this case. 1978 PA 564. See also footnote 8, describing another recent amendment.

that would temporarily harm a person. It has long been the rule in Michigan, however, that a literal construction ought not to be given where it is contrary to the apparent intent of the Legislature.[14]

"The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding do they convey as used in the particular act."[15]

Applying the rule of *noscitur a sociis,* that "[t]he meaning of a word is or may be known from the accompanying words",[16] we note that the language at issue is included in a statute dealing with such items as machine guns, bombs, blackjacks, metallic knuckles, billies and bludgeons. The objects in this class are not only exclusively weapons, but are weapons used almost exclusively in perpetration of crime. Finding the language at issue in a statute dealing with such a narrow class of weapons is a strong indication that the Legislature intended to reach only gas-ejecting *weapons.*

This impression is bolstered by examining related statutes.[17] When the Legislature amended the statute to include the language dealing with gas-ejecting devices, it was faced with the choice of

[14] *L A Darling Co v Water Resources Comm,* 341 Mich 654, 662; 67 NW2d 890 (1955); *Webster v Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948); *Heckathorn v Heckathorn,* 284 Mich 677, 681; 280 NW 79 (1938); *Stambaugh Twp v Iron County Treasurer,* 153 Mich 104, 107; 116 NW 569 (1908).

[15] 2A Sands, Sutherland Statutory Construction (4th ed), § 46.07, p 66.

[16] Black's Law Dictionary (4th ed), p 1209, quoted in *State ex rel Wayne County Prosecuting Attorney v Levenburg,* 406 Mich 455, 466-467, fn 8; 280 NW2d 810 (1979).

[17] See *Webster v Rotary Electric Steel Co, supra,* p 531, and cases there cited.

including it in 1927 PA 372, § 3, which made the manufacture, sale or possession of the listed objects a strict-liability offense, or in § 4, which required an intent to use the objects there listed "unlawfully against the person of another". MCL 750.226; MSA 28.423. The Legislature chose to include the language in the section making possession a strict-liability offense. Its choice indicates that it thought of gas-ejecting devices not only as weapons, but as weapons of such danger as to merit their prohibition regardless of the intent of the possessor.

Further, the title to the 1929 statute adding the gas-ejecting-device language indicates that the Legislature was concerned with weapons:[18]

"AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession, manufacture or sale of certain *weapons,* including gas ejecting or emitting *weapons,* and attachments, except by certain persons licensed to manufacture, sell or possess any gas ejecting or emitting weapon, cartridge or device * * *."[19] (Emphasis supplied.)

Contemporaneous construction of the statute is also of assistance. A 1931 decision, *People v Brown,*[20] considered a constitutional challenge to the statute. While that challenge was based on the

---

[18] For cases using the title to an act as an aid in construing the provisions of the act, see *L A Darling Co v Water Resources Comm, supra,* p 662; *Heckathorn v Heckathorn, supra,* pp 680-681.

[19] 1929 PA 206. The title further suggests that the terms in the statute other than "weapons", *i.e.,* "device, * * * cartridge, container or contrivance", may refer to "attachments". The Legislature apparently had in mind a device or contrivance into which a gas cartridge or container could be fitted which, when assembled, was a weapon. It is an indication of the seriousness of the Legislature's concern that it prohibited the component parts as well as the complete weapon.

[20] *People v Brown,* 253 Mich 537; 235 NW 245 (1931).

right to bear arms and was asserted by a defendant convicted of carrying a blackjack, this Court found it necessary to assess the nature of the items which the Legislature intended to prohibit to decide whether the provision was within the police power of the state. That characterization of the intended subject matter of the statute is of precedential significance here:

"The list of weapons in [1929 Compiled Laws] § 16751 * * * is significant and demonstrates a definite intention of the legislature to protect society from a recognized menace. It does not include ordinary guns, swords, revolvers, or other weapons usually relied upon by good citizens for defense or pleasure. It is a partial inventory of the arsenal of the 'public enemy', the 'gangster'. It describes *some* of the particular weapons with which he wars on the State and reddens his murderous trail."[21]

It was thus decided in 1931 that the statute dealt with weapons—weapons of such danger and malevolent associations as to merit total eradication from society, with narrow, licensed exceptions.[22] We see no reason to depart from that decision today.

Lynch was carrying in his pocket "some spray stuff like the mailman would carry"[23] that would

[21] *Id.,* p 542.

[22] 1929 PA 206, § 6-a provided, in part:

"Said concealed weapons licensing board may issue licenses to any bank, trust company, armored car company, railway company, express company, or other company, institution, copartnership or individual having in its, their, or his possession large sums of money or other valuables, authorizing such license to equip the premises or vehicles under *its, their or his control with gas ejecting devices to be used solely for the purpose* of protecting such premises or vehicles and the persons or property therein from criminal assaults." MCL 28.426a; MSA 28.94.

[23] Guilty plea hearing, October 7, 1976.

"make people cough".[24] These facts, adduced by the trial judge during Lynch's plea-taking proceeding, are such as would allow a trier of fact to reasonably draw the inference that Lynch was attempting to carry a gas-ejecting weapon. There was therefore an adequate factual basis for accepting his guilty plea.[25]

An indication that such small, hand-held gas-ejecting weapons are within the intended prohibition of the statute is provided by an opinion issued by the Attorney General in 1932.[26] That opinion states that a "gas pen" could be licensed only to equip certain premises or vehicles and not to be carried on one's person as a concealed weapon. The Attorney General's opinion that gas-pen weapons were prohibited by the statute coincides with our analysis of the intended reach of the statute.

Our construction of the statute disposes of the argument, relied on by the Court of Appeals, that the statute reaches non-weapon devices such as hairspray or deodorant.

The order of the Court of Appeals is reversed and Lynch's conviction is reinstated.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

LEVIN, J. *(concurring)*. As set forth in the opinion of the Court, the statute as enacted provided sufficiently clear notice that gas-ejecting weapons such as Lynch attempted to carry are prohibited. A separate question would be presented, however, if circumstances occurring since the statute's en-

---

[24] *Id.*

[25] *Guilty Plea Cases, supra,* p 130.

[26] OAG, 1930-1932, p 568 (May 10, 1932).

actment have added a gloss to the literal meaning of the statute's terms so that a reasonable citizen might doubt that gas-ejecting weapons of the kind Lynch attempted to carry were in fact within the compass of the statute's prohibition.

I write separately to suggest that had the record been developed with evidence establishing such circumstances, which appear to be present in this case, there would be a substantial question whether Lynch had fair notice of the statute's prohibition.

The statute focuses on weapons in the arsenal of the professional criminal, weapons used primarily to commit crimes. While gas-ejecting weapons may have been of this character in 1929 when the pertinent provision was enacted, it is not at all clear that they are of this character today. It may be that they are currently as likely to be found in a woman's purse or a mailman's pouch as in the hands of a criminal bent on mayhem.

This change in the character of a device cannot, of course, create an exception to a valid statute. Where, however, the device takes on a character unlike that of the devices prohibited so that a citizen might doubt that his device is of the kind the statute intended to prohibit, and where that doubt is reinforced, or indeed caused, by lack of prosecution in the face of the open and common sale and possession of the device, the doubt a reasonable citizen might feel as to whether his device is actually one which the statute prohibits may be such that the citizen is deprived of the clear warning that due process requires. A criminal statute must give fair notice to an ordinary citizen that his contemplated conduct is forbidden,[1]

_____
[1] *United States v Harriss,* 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954).

for "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes".[2]

"A penal enactment which is linguistically clear, but has been notoriously ignored by both its administrators and the community for an unduly extended period, imparts no more fair notice of its proscriptions than a statute which is phrased in vague terms. Though the language of a desuetudenal act may be clear, 'the hardened gloss life has written upon it' will seem to the individual a 'tougher and truer law than the dead words of the written text.' In this situation, a rational choice between statute and the 'living law' of both community and state becomes insuperably difficult and dangerous for the spectator."[3]

I have not been able to discover any record of a prosecution, before Lynch, for the sale or possession of a gas-ejecting device since the provision was enacted over 50 years ago.[4]

I do not suggest that prosecutorial non-use, changed circumstances or pervasive public disobedience may operate to repeal or modify a valid enactment. Repeal or modification is the province of the Legislature. If circumstances and public opinion have changed so as to make it now appropriate that citizens be allowed to carry gas-ejecting weapons for self-defense, it is for the Legislature to so declare, as it recently has in limited fashion.[5] The question suggested here is not whether nonenforcement can cause a statute to lapse into desue-

[2] *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939).

[3] Bonfield, *The Abrogation of Penal Statutes by Nonenforcement,* 49 Iowa L Rev 389, 416 (1964).

[4] At least two prosecutions have been brought since Lynch was charged. *People v Guy,* 84 Mich App 610; 270 NW2d 662 (1978); *People v Stinson,* 88 Mich App 672; 278 NW2d 715 (1979).

[5] See footnote 8 of the opinion of the Court.

tude and thereby become constitutionally unenforceable, but rather whether a combination of the circumstances described can operate to deprive a person of the requisite clarity of notice that his conduct is forbidden.

The statute appears to be drawn to reach a narrow class of particularly dangerous and crime-oriented weapons. The device Lynch carried might not appear, in the minds of today's populace, to be part of that narrow class. The common public sale of these devices without response from law enforcement officials would naturally add to the doubt that these devices are such as the statute prohibits.

This situation is similar to that presented to the United States Supreme Court in *Poe v Ullman*.[6] In that case, the plaintiffs sought a declaratory judgment of the unconstitutionality of two Connecticut statutes which made it illegal to use contraceptives or to be an accessory to such use. A majority of the Court concluded that the question was not ripe for decision, with three Justices joining an opinion by Justice Frankfurter basing that conclusion on the almost complete lack of prosecutions during the statutes' 75-year existence despite the open sale of contraceptives throughout the state. Justice Frankfurter stated:

"We were advised by counsel for appellants that contraceptives are commonly and notoriously sold in Connecticut drug stores. Yet no prosecutions are recorded; and certainly such ubiquitous, open, public sales would more quickly invite the attention of enforcement officials than the conduct in which the present appellants wish to engage—the giving of private medical advice by a doctor to his individual patients, and their private use of the devices prescribed. The undeviating policy of nullification by Connecticut of its anti-contra-

6 *Poe v Ullman*, 367 US 497; 81 S Ct 1752; 6 L Ed 2d 989 (1961).

ceptive laws throughout all the long years that they have been on the statute books bespeaks more than prosecutorial paralysis. What was said in another context is relevant here. 'Deeply embedded traditional ways of carrying out state policy * * *'—or not carrying it out—'are often tougher and truer law than the dead words of the written text.' "[7]

As the circumstances in *Poe* went beyond mere prosecutorial paralysis to suggest a truer law than the dead letter of the statute, so the circumstances which appear to be present here might have added a gloss to the words of the statute, giving them a truer meaning than literalism would convey, and creating doubt in the minds of ordinary persons sufficient to obfuscate an otherwise fair warning.

Moreover, the apparent increased acceptance and use of gas-ejecting devices by law-abiding citizens precludes reliance upon the nature of the offense itself to provide notice of the probable illegality of the conduct. This would distinguish *United States v Elliott*,[8] where the court found that the 50-year non-use of a statute was not a defense to prosecution under the statute for conspiring to destroy a bridge in Zambia:

"However, [the] statute does not penalize conduct which, through a long period of non-enforcement, has acquired the status of customary usage, nor has opprobrium for the act been suddenly revived. Conspiring to destroy a bridge is not, and never has been, permitted by community mores."[9]

Here, there appears to have been a shift in "community mores": the tool of the "gangster" may well have become a weapon "usually relied

[7] *Id.,* p 502, quoting *Nashville C & SL R Co v Browning,* 310 US 362, 369; 60 S Ct 968; 84 L Ed 1254 (1940).

[8] *United States v Elliott,* 266 F Supp 318 (SD NY, 1967).

[9] *Id.,* p 326.

upon by good citizens for defense".[10] The shift has apparently been encouraged or at least reinforced by a uniform lack of prosecution in the face of open and widespread availability. A combination of these factors, if proven, could have deprived Lynch of the requisite clarity of notice that his conduct was prohibited. The failure to develop the record with such evidence, however, precludes us from granting relief on this basis.

---

[10] *People v Brown,* 253 Mich 537, 542; 235 NW 245 (1931).