# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANITA DIANE LAWHORN,

        Defendant-Appellant.

FOR PUBLICATION
June 15, 2017
9:00 a.m.

No. 330878
Kent Circuit Court
LC No. 14-010339-FH

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Anita Diane Lawhorn, was convicted by a jury of third-degree child abuse, MCL 750.136b(5). Defendant was sentenced to 365 days in jail with credit for 36 days served and 60 months' probation. The trial court ordered defendant to serve 150 days of her jail sentence immediately with the remainder to be served at the end of probation or upon court order, whichever occurs first. Defendant now appeals by right.

Defendant argues that her conviction should be vacated because the third-degree child abuse statute, MCL 750.136b(5), is unconstitutionally vague as it does not provide fair notice of the prohibited conduct and because it is so indefinite that it gives unstructured and unlimited discretion to the trier of fact to arbitrarily determine whether an offense was committed. We disagree and so affirm.[1]

---

[1] Defendant did not challenge the constitutionality of MCL 750.136b in the trial court; consequently, defendant's claim is unpreserved. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). Ordinarily, we review challenges to the constitutionality of a statute under the void-for-vagueness doctrine de novo. *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000). Unpreserved challenges to the constitutionality of a statute, however, are reviewed for plain error. *Vandenberg*, 307 Mich App at 61. On plain error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the

-1-

MCL 750.136b defines the crime of third-degree child abuse as follows:

> (5) A person is guilty of child abuse in the third degree if any of the following apply:
>
> (a) The person knowingly or intentionally causes physical harm to a child.
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child.
>
> (6) Child abuse in the third degree is a felony punishable by imprisonment for not more than 2 years.

" 'Child' means a person who is less than 18 years of age and is not emancipated by operation of law . . . ." MCL 750.136b(1)(a). " 'Person' means a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d). For purposes of MCL 750.136b, the term "physical harm" is defined as "any injury to a child's physical condition." MCL 750.136b(1)(e). In addition, MCL 750.136b(9) provides that "[t]his section does not prohibit a parent or guardian, or other person permitted by law or authorized by the parent or guardian, from taking steps to reasonably discipline a child, including the use of reasonable force."

"[A] statute is presumed to be constitutional and is so construed unless its unconstitutionality is clearly apparent." *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). "To determine whether a statute is unconstitutionally vague, this Court examines the entire text of the statute and gives the words of the statute their ordinary meanings." *People v Lockett*, 295 Mich App 165, 174; 814 NW2d 295 (2012). A court must also consider any judicial constructions of the statute when determining if it is unconstitutionally vague. *Boomer*, 250 Mich App at 539.

"The void for vagueness doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011) (quotation marks and citation omitted). As explained by the United States Supreme Court in *Grayned v City of Rockford,* 408 US 104, 108-109; 92 S Ct 2294, 33 L Ed 2d 222 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary

outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." [Footnotes omitted, alterations and omission in original.]

Following from these principles, we have stated:

A statute may be challenged for vagueness on three grounds: (1) it is overbroad and impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. [*Roberts*, 292 Mich App at 497.]

Because defendant does not argue that the third-degree child abuse statute is overly broad or impinges on First Amendment rights, we need only address the issues of fair notice and indefiniteness.

We begin by noting that "[t]he party challenging the constitutionality of a statute has the burden of proving the law's invalidity." *People v Bosca*, 310 Mich App 1, 71; 871 NW2d 307 (2015). A vagueness challenge to a statute not based on First Amendment grounds must be reviewed on the basis of the particular facts of the case at issue. *People v Nichols*, 262 Mich App 408, 410; 686 NW2d 502 (2004). Therefore, a defendant may not assert that a statute is overbroad and reaches innocent conduct if the defendant's conduct clearly falls within the language of the statute. See *People v Lynch*, 410 Mich 343, 352; 301 NW2d 796 (1981). In other words, "[a] defendant has standing to raise a vagueness challenge only if the statute is vague as applied to his conduct." *People v Al-Saiegh*, 244 Mich App 391, 397 n 5; 625 NW2d 419 (2001). Further, even if "a statute may be susceptible to impermissible interpretations, reversal is not required where the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness and where the defendant's conduct falls within that prescribed by the properly construed statute." *Id*. "To give fair notice, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999) (citation omitted). "A statute cannot use terms that require persons of ordinary intelligence to speculate regarding its meaning and differ about its application." *People v Sands*, 261 Mich App 158, 161; 680 NW2d 500 (2004). "For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id*. To survive constitutional scrutiny, the words used in a statute are not required to have a single meaning, *Dep't of State Compliance & Rules Div v Mich Ed Ass'n-NEA*, 251 Mich App 110, 120; 650 NW2d 120 (2002), and a statute need not define an offense with

"mathematical certainty," *Grievance Administrator v Fieger*, 476 Mich 231, 255; 719 NW2d 123 (2006) (citation omitted).

In this case, defendant's vagueness challenge is directed solely at the statutory definition of "physical harm" as "any injury to a child's physical condition," MCL 750.136b(1)(e). We have previously rejected the argument that the definition of physical harm in MCL 750.136b is unconstitutionally vague for purposes of fourth-degree child abuse. *People v Gregg*, 206 Mich App 208, 210-211; 520 NW2d 690 (1994). We held that "the statute clearly provides fair notice to persons of ordinary intelligence of the conduct proscribed, namely, an omission or reckless act that causes any injury to a child's physical condition." *Id*. at 211. Fourth-degree child abuse is also defined in MCL 750.136b. The same definition of "physical harm" applies to both third-degree and fourth-degree child abuse although third-degree child abuse requires a knowing or intentional act and resulting physical harm to the child rather than an omission or reckless act that causes physical harm. See MCL 750.136b(1)(e), (5), and (7). Furthermore, a person of ordinary intelligence need not speculate about the meaning of "any injury to a child's physical condition" to understand the nature of the physical harm that must not be inflicted on a child. Anyone may consult a dictionary, and courts themselves often do so. *Sands*, 261 Mich App at 161. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "injury" as "hurt, damage, or loss sustained." As relevant to the statute at issue, "physical" can mean "of or relating to the body," and "condition" may mean "a state of being." *Id*. Thus, a person of ordinary intelligence would clearly understand that the third-degree child abuse statute prohibits a person from knowingly or intentionally causing harm or damage to the state of a child's body, or knowingly or intentionally committing an act that poses an unreasonable risk of harm or injury to a child and results in harm or damage to the state of a child's body.

Additionally, we held in *Gregg* that the provision in MCL 750.136b providing that a parent or guardian shall not be prohibited "from taking reasonable steps to discipline a child, including the use of reasonable force" was not overbroad and did not impinge the defendant's right to discipline his child. *Gregg*, 206 Mich App at 213. We relied on dictionary definitions of "reasonable" that defined the term to mean

> Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Thinking, speaking, or acting according to the dictates of reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable.
>
> * * *
>
> 1. agreeable to or in accord with reason or sound judgment; logical. 2. not exceeding the limit prescribed by reason; not excessive. [*Id*. (quotation marks and citations omitted).]

Thus, a person of ordinary intelligence would also understand that in using physical discipline on a child, he or she must act in a manner that is reasonable and not excessive. See *Sands*, 261 Mich App at 161; *Gregg*, 206 Mich App at 213. Therefore, MCL 750.136b(5) provides fair notice of the conduct that is prohibited. See *Noble*, 238 Mich App at 652.

We also conclude that MCL 750.136b(5) is not so vague that it allows for arbitrary enforcement or gives unstructured and unlimited discretion to the trier of fact to determine whether an offense was committed. A criminal statute "must provide standards for enforcing and administering the laws in order to ensure that enforcement is not arbitrary or discriminatory; basic policy decisions should not be delegated to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *In re Forfeiture of 719 N Main*, 175 Mich App 107, 112-113; 437 NW2d 332 (1989). This Court has held that applying a "reasonable person standard" to a statute is sufficient "to provide fair notice of the type of conduct prohibited," as well as preventing enforcement abuses by "prevent[ing] any ad hoc and subjective application by police officers, judges, juries, or others empowered to enforce" it. *Plymouth Charter Twp v Hancock*, 236 Mich App 197, 201-202; 600 NW2d 380 (1999). "[S]cienter requirements [also] alleviate vagueness concerns." *Gonzales v Carhart*, 550 US 124, 149; 127 S Ct 1610; 167 L Ed 2d 480 (2007).

In this case, MCL 750.136b(5) includes a scienter requirement, i.e., that the physical harm either be caused "knowingly or intentionally" or be the result of a knowing or intentional act that poses an unreasonable risk of harm or injury; the scienter requirement "alleviate[s] vagueness concerns." See *Carhart*, 550 US at 149. Furthermore, the provision that allows parents or guardians to use "reasonable force" when physically disciplining children provides a sufficient standard to prevent the statute from being applied in a subjective manner by law enforcement, judges, or juries. See *Hancock*, 236 Mich App at 202.

Testimony at trial revealed that defendant admitted that she "whupped" the victim with a belt, hit him "too hard," and caused marks to be left on the victim. Additionally, Kirsten Harder testified that when she investigated the case as part of her work for Child Protective Services (CPS) in May 2013, she observed injuries on the back of the victim's thigh and calves that were scabbed over, and the victim reported that he also had marks on his buttocks that had bled and scabbed over. When Harder asked the victim how he received the marks, he indicated that he had gotten in trouble at home a few days earlier, that defendant had "whupped him with a belt on the butt and the back of his legs," and that the marks were made by the "whupping" defendant gave him. According to Harder, the victim also reported that defendant instructed him after the "whupping" "not to tell anybody what happened at home." Dr. N. Debra Simms testified that she examined the victim in September 2014 and observed scars on the back of the victim's legs that could have been caused by a cord, thin belt, or wire coat hanger, and which were most likely permanent. Dr. Simms took photographs of the marks on the victim's body that were admitted into evidence at trial, and Harder testified that the photographs Dr. Simms had taken showed marks that were in the same area on the victim as the area where Harder had observed marks on him in 2013.

A jury could reasonably conclude from this evidence that defendant knowingly or intentionally caused an injury to the victim's physical condition—i.e. "physical harm"—and that the force defendant exerted in disciplining the victim exceeded that which would be "reasonable," supporting the jury's determination that defendant was guilty of third-degree child abuse. Defendant's actions—beating her son with a belt and causing scars—clearly fall within the conduct prohibited by MCL 750.136b(5); consequently, the statute is not unconstitutionally vague as applied to defendant. *Lynch*, 410 Mich at 350; *Gregg*, 206 Mich App at 210-213. The statutory definition of third-degree child abuse is sufficiently definite that ordinary people can

understand what conduct is prohibited and to prevent arbitrary and discriminatory enforcement. See *Boomer*, 250 Mich App at 538-539.

Defendant essentially argues that to avoid being considered unconstitutionally vague, the statute should specifically delineate all of the acceptable and unacceptable forms of corporal punishment and should define physical harm more narrowly. Physical harm is indeed defined broadly by the statute to include "any injury to a child's physical condition." MCL 750.136b(1)(e). But an offense need not be defined with "mathematical certainty," *Fieger*, 476 Mich at 255.

We conclude that the statute is not unconstitutionally vague; therefore, we affirm defendant's conviction. Defendant also raises a challenge to her sentencing. She argues that her sentence of one year in jail with five years' probation was unreasonable given that her minimum guidelines range was 0 to 11 months was unreasonable. We disagree.

"[T]he proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

MCL 769.34(4)(a) requires the trial court to impose "a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less," when a defendant's guidelines range is less than 18 months. Because defendant's guidelines range was 0 to 11 months, defendant's sentence of one year in jail constitutes an upward guidelines departure of one month of additional jail time. MCL 769.31(a). But, based on our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), "under Subsection (4)(a), a trial court may, but is no longer required to, impose an intermediate sanction if the upper limit of the recommended minimum sentence range is 18 months or less." *People v Schrauben*, 314 Mich App 181, 195; 886 NW2d 173 (2016).

Because defendant was sentenced after the opinion was issued in *Lockridge*, and the trial court was aware of the new sentencing standards set forth in that case, defendant's departure sentence must be reviewed for reasonableness under the "principle of proportionality" test adopted in *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990). See *People v Steanhouse*, 313 Mich App 1, 42, 45, 46-47, 48; 880 NW2d 297 (2015). The *Steanhouse* Court held "that a sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*." *Steanhouse*, 313 Mich App at 47-48. In *People v Masroor*, 313 Mich App 358, 374; 880 NW2d 812 (2015), this Court summarized the reasonableness standard of review to be applied to departure sentences:

> In a nutshell, *Milbourn*'s "principle of proportionality" requires a sentence "to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. *Milbourn* instructs that departure sentences "are appropriate where the guidelines do not adequately account for

important factors legitimately considered at sentencing" so that the sentence range calculated under the guidelines "is disproportionate, in either direction, to the seriousness of the crime." *Id*. at 657. The extent of the departure must also satisfy the principle of proportionality. *Id*. at 660.

In *Steanhouse*, 313 Mich App at 46 (citations omitted), this Court also noted several factors that courts have considered in applying the proportionality standard, including "(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation."

When justifying the sentence imposed in this case, the trial court noted several things about the circumstances surrounding the crime and defendant's background. First, the trial court noted that the victim murdered another child. There was testimony at trial that the victim had committed this murder, and the presentence investigation report (PSIR) included a description of the circumstances surrounding the victim's apprehension immediately after the murder. The PSIR stated that the victim called 9-1-1 after the stabbing and told the dispatcher that "he hated his life, had 'taken many pills,' and he felt like no one loved him." Thus, the trial court's factual finding was supported by a preponderance of the evidence and was not clearly erroneous. *Hardy*, 494 Mich at 438. Contrary to defendant's argument on appeal, the trial court did not find that defendant was responsible for the other child's death or punish defendant for that murder. Rather, the trial court noted the likely detrimental effect that defendant's treatment of the victim and the accompanying home environment had on the victim.

Second, the trial court found that defendant must have known that Bernard Harrold, defendant's stepfather, beat the victim. Moreover, Harrold himself testified at trial that he used corporal punishment on the victim when he started fires or got into trouble at school. Harrold also testified that he lived with defendant in May 2013, took care of the children while defendant was at work, and inflicted visible physical marks on the victim after using corporal punishment on him in May 2013. Testimonial and photographic evidence of the marks on the victim's legs were introduced at trial. Therefore, the trial court's factual finding in this respect was supported by a preponderance of the evidence and was not clearly erroneous.

Third, the trial court found that regardless of whether defendant used cocaine, it was highly likely that defendant knew that there was cocaine in the home and that Harrold was using cocaine. Nonetheless, defendant still permitted Harrold to care for the victim and the other children. Harrold testified at trial that he was sometimes under the influence of alcohol and cocaine, and the PSIR indicated that the police found drug paraphernalia that tested positive for cocaine when they executed a search warrant at defendant's and Harrold's residence in August 2014. Furthermore, Leonard testified at the preliminary examination that during the search, the police discovered "cocaine paraphernalia, beer cans scattered throughout the home, with flies, mouse feces" and observed mold and backed up sinks in the residence. The PSIR also indicated that defendant denied that she was under the influence of drugs when the incident at issue occurred and that she denied ever having any problems with substance abuse or addiction. The trial court, while acknowledging a belief that defendant used cocaine, did not find that she

actually used cocaine. Instead, the court considered generally the fact that cocaine was being used in the home. This factual finding was supported by a preponderance of the evidence and was not clearly erroneous.

Fourth, the trial court found that there were deplorable conditions inside the home. According to the PSIR, when the search warrant was executed at the residence, "[t]he detective observed the home to be in an unsafe and deplorable condition," and "[d]rug paraphernalia was found in the upstairs bedroom, which later tested positive for cocaine." Thus, this factual finding was supported by a preponderance of the evidence and was not clearly erroneous.

Fifth, the trial court found that defendant was involved in some incidents in New York from "many years ago" that suggested "at least the possibility if not the likelihood of some type of prior abuse or neglect." The trial court did not make any specific finding about defendant's conduct in these incidents, but merely noted her involvement. A CPS report for defendant's case, which is included in the lower court record, describes cases from New York in 1995 and 2000 that involved allegations that defendant abused and neglected her children. One of these cases resulted in defendant's parental rights being terminated by surrender. Contrary to defendant's appellate argument, we find no conflict between the trial court's findings at sentencing and at trial with respect to this matter. At trial, the trial court merely ruled that evidence of the victim's statement that he was afraid that defendant's other children would be taken away from her where his fear was apparently based on knowledge of matters that had transpired earlier in New York could only come in at trial to show the victim's state of mind and his concern for defendant. The trial court ruled that it did not matter whether the allegations were true or not for purposes of the trial. When the statement was introduced, the trial court instructed the jury in accord with its ruling about the purpose for which the statement could be considered. Thus, this factual finding by the trial court was supported by a preponderance of the evidence and was not clearly erroneous.

On appeal, defendant does not cite any authority to support an argument that the sentence itself was unreasonable. Her only contention is that the trial court made erroneous factual findings. As previously discussed, the trial court's findings of fact were not clearly erroneous. With respect to the sentence the trial court imposed, we conclude that all of the above factors considered by the trial court related to the "nature of the offense and the background of the offender." *Milbourn*, 435 Mich at 651. Furthermore, the trial court could have reasonably found that the severity of the impact of defendant's conduct on the victim received inadequate weight under the guidelines' calculation. Defendant was assessed 10 points for offense variable (OV) 4, which applies when a defendant caused "[s]erious psychological injury requiring professional treatment" to the victim, MCL 777.34(1)(a), and 10 points for OV 10, which applies when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status, MCL 777.40(1)(b). So, although the guidelines accounted for some degree of the harm the victim suffered, it was reasonable for the trial court to conclude that the factors it considered, especially the effects of defendant's behavior on the victim that culminated in his stabbing another child and saying that he hated his life and that nobody loved him, were not adequately considered in the guidelines calculation. See *People v Houston*, 448 Mich 312, 321; 532 NW2d 508 (1995) (holding that the sentence imposed by the trial court satisfied the proportionality test where "the trial judge found that the recommended range was inadequate to reflect the seriousness of this offense" and further

held that even if the guidelines range adequately reflected the seriousness of the offense, "the sentence did not constitute an abuse of discretion because the offense involved circumstances not accounted for, or accounted for inadequately, in formulating the guidelines."). A departure sentence does not need to be arithmetically measured. *Id*. at 320. Finally, the extent of this departure—one month—was minor in light of all of the factors the trial court found demonstrating the seriousness of the offense and surrounding circumstances. See *Masroor*, 313 Mich App at 374.

For the reasons discussed, defendant's sentence was "proportionate to the seriousness of the circumstances surrounding the offense and the offender" and fulfilled the "principle of proportionality." *Milbourn*, 435 Mich at 636. Defendant's sentence was therefore reasonable. *Lockridge*, 498 Mich at 392; *Steanhouse*, 313 Mich App at 47-48.

We affirm.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro